A96A0143. UNDERWOOD et al. v. NATIONSBANC REAL ESTATE
SERVICE, INC.
(471 SE2d 291)

BEASLEY, Chief Judge.

Appellant Cheryl Underwood worked as a bookkeeper for Underwood & Moore Construction Company (there is no family relationship between the appellants and the construction company and Cheryl Underwood was nothing more than a salaried employee). On April 4, 1990, the construction company borrowed $80,000 from the predecessor of NationsBanc Real Estate Service to finance construction of a home for a person named Bennett. In addition to the usual financing and security instruments, the bank was given a guaranty of the $80,000 debt signed by Cheryl Underwood and her husband Alvin, as well as by the construction company's principals, Moore and Underwood.[1] In a separate note dated December 4, 1990, the bank loaned the construction company an additional $7,000.

---

[1] The court's order states that the Underwoods contend Cheryl, not Alvin, signed his name. It is not argued that there is any error concerning this issue and the Underwoods state in their brief that both executed the guaranty.

The construction company may have requested additional funds and it is contended the bank made advances under the "Bennett" property note to cover interest payments on other debts the construction company owed to the bank, avoiding default on those debts. Eventually the company defaulted on the "Bennett" debt, and Bennett bought the property at foreclosure for $66,500. The foreclosure sale was confirmed and left a deficiency of $28,839.70. The bank sued Cheryl and Alvin Underwood, but apparently not the company's principals, on the guaranty for the deficiency. The appeal is from the grant of summary judgment to the bank.

Contrary to the Underwoods' claim, they did not merely agree to guarantee payment of $80,000 and "nothing else," but rather guaranteed payment of contractually defined "Liabilities," which included: a) the $80,000 real estate note and its interest, b) extensions or renewals of it, c) any advances to preserve priority of it, d) late charges, etc., under it, and e) "all other monies" owed to the bank by the construction company. This description, and other language in the contract, refutes the Underwoods' arguments.

They contend the contract is ambiguous and must be construed against the bank or presented to a jury. There is nothing ambiguous about these straightforward terms: "Undersigned hereby unconditionally guarantees the full and prompt payment of . . . (e) the payment of all other monies which shall at any time be owing to Lender from Borrower, its successors or assigns, either directly or indirectly." Nor is any of the following language ambiguous: "Lender may, from time to time, without notice to Undersigned, and without affecting, diminishing or releasing the liability of Undersigned . . . (c) . . . increase or decrease the indebtedness of Borrower"; "Undersigned hereby expressly waives: . . . (b) notice of the existence or creation of any of the Loan Documents or all or any of the Liabilities or Obligations"; "It is fully understood that until each and every one of the covenants and agreements of this guaranty is fully performed, [U]ndersigned's undertakings hereunder shall not be released, in whole or in part, by any action or thing which might, but for this provision of this guaranty, be deemed a legal or equitable discharge of a surety or guarantor, . . . or by reason of any action taken or omitted by Lender, whether or not such action or failure to act varies or increases the risk of, or affects the rights of, Undersigned . . . and Undersigned hereby expressly waives and surrenders any defense to the performance of its undertakings hereunder based upon any of the foregoing acts, omissions, things, agreements or waivers of any of them"; "[a]ny amount received by Lender from whatever source and applied by it toward payment of the Liabilities shall be applied in such order of application as the Lender may from time to time elect."

The Underwoods contend the court failed to properly apply

OCGA § 10-7-21 ("Any change in the nature or terms of a contract is called a 'novation'; such novation, without the consent of the surety, discharges him") and OCGA § 10-7-22 ("Any act of the creditor . . . which injures the surety or increases his risk or exposes him to greater liability shall discharge him"). They argue the December 4, 1990 note for $7,000 was a new obligation of the construction company beyond the original $80,000 note and was both a novation and an increase in risk imposed without their consent, so as to discharge them from any liability on the guaranty.

Even if the language of the guaranty allowed such an additional note to be considered a novation or an increase in risk, the protection of the cited Code sections can be waived by the guarantor's consent to a novation or additional risk; consent can be given in advance, even at the time the guaranty is signed. *Overcash v. First Nat. Bank*, 115 Ga. App. 499, 501-502 (155 SE2d 32) (1967); *Bobbitt v. Firestone Tire & Rubber*, 158 Ga. App. 580, 581-582 (2) (281 SE2d 324) (1981). See also *Dunlap v. C & S DeKalb Bank*, 134 Ga. App. 893, 895-896 (3, 4) (216 SE2d 651) (1975). As noted above, the language of the guaranty specifically contemplated increase in the company's debt and the creation of new obligations, and it included waivers of any "legal or equitable discharge" and of any defense based upon an increase in risk. See *Casgar v. C & S Nat. Bank*, 188 Ga. App. 234, 236 (4) (372 SE2d 815) (1988).

In a related argument, the Underwoods contend the bank misappropriated funds by advancing funds under the "Bennett" note and applying them to other debts the construction company owed the bank to prevent the company defaulting on those, thereby increasing the Underwoods' risk. This argument fails because they specifically agreed that the bank could take funds received "from whatever source" and apply those funds to the company's debts as it saw fit.

They also contend that Georgia law prevents anything in the guaranty from operating as a waiver of any bank conduct beyond "simple negligence," see *Turner v. Walker County*, 200 Ga. App. 565, 566 (2) (408 SE2d 818) (1991); *Harris v. Nat. Evaluation Sys.*, 719 FSupp. 1081, 1084 (N.D. Ga. 1989), affirmed without opinion, 900 F2d 266 (11th Cir. 1990), and that the assignment of funds was gross negligence or wanton and wilful conduct. This is not a tort case involving a release. Compare *Turner*, supra; *Harris*, supra. The bank's obligations to the Underwoods are governed by the terms of the contract of guaranty, not by tort concepts of duty of care. As shown above, the agreement permitted the bank's actions, and the protections afforded by OCGA §§ 10-7-21 and 10-7-22 can be, and were, waived.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MAY 9, 1996.

*Buzzell & Pinkston, R. William Buzzell II, Loretta L. Pinkston,* for appellants.

*Lane & Jarriel, Walter J. Lane, Jr.,* for appellee.