## A10A2000. CORE LaVISTA, LLC et al. v. CUMMING et al.
### (709 SE2d 336)

DOYLE, Judge.

In this suit on a promissory note and an unconditional personal guaranty of the note, Core LaVista, LLC and Steven Delonga appeal from the trial court's order granting summary judgment to plaintiffs James Cumming and Clear Development, Inc. and awarding them $891,338.45 in principal, $228,721.50 in pre-judgment interest, and $5,803 in attorney fees, plus post-judgment interest and court costs. On appeal, Delonga contends that the trial court erred by finding that he is personally liable for the debt on the note pursuant to the personal guaranty he executed, arguing that the note was subsequently modified by the parties to increase the amount of debt and, as a result, his risk under the guaranty also increased.[1] Both Core LaVista and Delonga also challenge the court's award of attorney fees to the appellees. For the reasons that follow, we conclude that the trial court did not err by finding Delonga personally liable on the note, but we reverse the award of attorney fees made pursuant to the terms of the note.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant."[2] The relevant facts of this case are straightforward and undisputed.

In August 2007, Core LaVista executed a promissory note in favor of Cumming in the amount of $650,000, with a maturity date of August 31, 2008. Delonga signed the note on behalf of Core LaVista as the company's managing member. The note included, inter alia, the following provision:

> The Security Deed, together with this Promissory Note, *any guaranty executed in conjunction with this Promissory Note*, and all other documents to or of which Lender is a party or beneficiary now or hereafter evidencing, securing or otherwise relating to the indebtedness evidenced hereby, are hereinafter collectively referred to as the "Loan Documents."[3]

Contemporaneously with the execution of the note, Delonga

---

[1] In this appeal, Core LaVista does not challenge the court's ruling that it is liable on the note. Therefore, Core LaVista's liability on the note is affirmed by operation of law.

[2] (Citations and punctuation omitted.) *White v. Ga. Power Co.*, 265 Ga. App. 664, 664-665 (595 SE2d 353) (2004).

[3] (Emphasis supplied.)

signed, in his personal capacity, an "Unconditional Guaranty of Payment and Performance" for the repayment of the note.[4] The guaranty contained the following relevant provisions:

> Guarantor does hereby unconditionally guarantee to Lender and its successors, successors-in-title and assigns: (a) the full and prompt payment when due, whether by acceleration or otherwise, with such interest as may accrue thereon, either before or after maturity thereof, of the indebtedness payable under that certain Promissory Note dated on or about even date herewith made by Borrower to the order of Lender in the original principal amount of SIX HUNDRED FIFTY THOUSAND AND NO/100THS ($650,000) DOLLARS, *together with any renewals, modifications, consolidations and extensions thereof* (hereinafter referred to as the "Note")[.]
>
> Guarantor hereby covenants and agrees that Lender may at any time, and from time to time, without notice to or further consent from Guarantor, either with or without consideration, . . . *modify the terms of the Note or the Loan Documents; [or] extend or renew the Note for any period*[.] . . . *No such action which Lender shall take or fail to take* in connection with any of the Loan Documents, . . . nor any course of dealing by Lender with Borrower or any other person, *shall release Guarantor's obligations hereunder, affect this Guaranty in any way* or afford Guarantor any recourse against Lender. The provisions of this Guaranty *shall extend and be applicable to all renewals, amendments, extensions, consolidations or modifications of the Note* or the Loan Documents and *shall be deemed to include any such renewals, extensions, amendments, consolidations or modifications thereof.*[5]

In addition, in the guaranty, Delonga waived any defenses related to the "creation or incurring of any new or additional indebtedness or obligation . . . in connection with the obligation hereby guaranteed," to notices to which he might otherwise be entitled, or to the sale or assignment by the lender of the loan documents. He also expressly agreed to pay the lender all expenses, including reasonable attorney

---

[4] See *Roswell Festival v. Athens Intl.*, 259 Ga. App. 445, 448 (2) (576 SE2d 908) (2003) ("A contract of guaranty or suretyship is primarily one to pay the debt of another which may be due and payable by the principal debtor to the creditor upon default.") (citation and punctuation omitted).

[5] (Emphasis supplied.)

fees, paid or incurred by the lender in trying to collect on the note, to enforce the obligations of the borrower under the note, or to enforce the guaranty.

Core LaVista did not pay the note when it matured on August 31, 2008. Instead, on September 25, 2008, Delonga (on behalf of Core LaVista) and Cumming executed a modification to the promissory note in which the parties agreed (a) to modify the principal amount of the note from $650,000 to $812,500 (the difference representing the outstanding accrued interest on the original principal amount); (b) to change the note's maturity date from August 31, 2008, to February 28, 2009; and (c) to substitute "modified loan amount" for "principal" in Section 1 (a) of the note and reflect that the interest rate on the modified loan amount would be 25 percent per annum. The modification agreement further stated that "[a]ll other terms and conditions of the Note remain in full effect and are not modified by this agreement."

Ultimately, Core LaVista defaulted on the note, and Cumming notified Core LaVista and Delonga of the default and his intention to "avail himself of all remedies available to him under the terms of the Note, the Security Deed, as well as the Unconditional Guaranty of Payment and Performance signed by you in connection with the extension of credit by Lender to Borrower." When neither Core LaVista nor Delonga cured the default, Cumming and Clear Development[6] filed the instant suit against them on the note and the guaranty, seeking the principal, pre- and post-judgment interest, court costs, and attorney fees pursuant to either the terms of the note and the guaranty or OCGA § 13-6-11. Following a hearing on the plaintiffs' motion for summary judgment, the trial court granted the motion, finding that the unambiguous language of the original note authorized the parties to modify the terms of the note without modifying, preempting, or altering the remaining terms. Further, the court found that

the absence of the Unconditional Guaranty or Mr. Delonga's name in the Modification to Promissory [Note] does not extinguish his liability, but invokes the provisions of the Unconditional Guaranty that state that the guaranty applies to any "renewals, modifications, consolidations and extensions of the [Promissory Note] thereof[,]" thereby not releasing Defendant Delonga's obligations under the Unconditional Guaranty, but [instead] imputing Core

---

[6] In September 2007, Cumming assigned 40 percent interest in the note to Clear Development, Inc.

[LaVista], LLC's obligation under the Modification to the Promissory Note upon Defendant Delonga [as guarantor].

Finally, the court awarded the plaintiffs attorney fees, pursuant to the terms of the note and the guaranty, after finding that the plaintiffs had provided the defendants with timely notice under OCGA § 13-1-11 (a) (3).

1. On appeal, Delonga contends that the trial court erred by granting summary judgment to the appellees as to his personal liability on the note under the guaranty. We disagree.

(a) Delonga argues that the trial court improperly construed the terms of his unconditional personal guaranty against him by concluding that the guaranty applied to the Modification to Promissory Note.[7] "Contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court."[8] Because the essential, relevant facts in this case were plain and undisputed, the interpretation of the guaranty executed by Delonga was a matter of law for the trial court to resolve.[9]

In this case, the trial court correctly found that the language of the Promissory Note, the Unconditional Guaranty, and the Modification to Promissory Note was unambiguous. Because the documents' provisions are clear, the court's proper role was to apply the terms as written.

[I]f no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. That is, where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties.[10]

Thus, Delonga has failed to show that, in reaching its conclusions, the trial court impermissibly construed the unambiguous language of the documents in a manner that relied upon evidence outside the documents or in a manner that was contrary to the plain meaning of

---

[7] See OCGA § 10-7-3 ("The contract of suretyship is one of strict law; and the surety's liability will not be extended by implication or interpretation.").

[8] (Citation omitted.) *Brookside Communities v. Lake Dow North Corp.*, 268 Ga. App. 785, 786 (1) (603 SE2d 31) (2004). See OCGA § 13-2-1 ("The construction of a contract is a question of law for the court.").

[9] See *Brookside Communities*, 268 Ga. App. at 786 (1).

[10] *Magnetic Resonance Plus v. Imaging Systems Intl.*, 273 Ga. 525, 526 (1) (543 SE2d 32) (2001).

the language.

(b) According to Delonga, because the appellees failed to present any evidence that he personally guaranteed the Modification to Promissory Note, the trial court erred by finding him liable under the guaranty.

"A plaintiff seeking to enforce a promissory note establishes a prima facie case by producing the note and showing that it was executed. Once that prima facie case has been made, the plaintiff is entitled to judgment as a matter of law unless the defendant can establish a defense."[11] Here, attached to the appellees' complaint were copies of the August 31, 2007 Promissory Note; Delonga's Unconditional Guaranty of the note, which was executed the same day; and the September 25, 2008 Modification to Promissory Note. By affidavit, Delonga admitted that he executed all three documents. Thus, the appellees presented a prima facie case entitling them to judgment as a matter of law unless Delonga established a defense to his liability on the guaranty.

In the guaranty, however, Delonga *expressly waived all notices or defenses* to which he might be entitled under the guaranty, to the extent permitted by law. As established above, the language of the waiver is plain, unambiguous, and capable of only one reasonable interpretation.

Georgia law is clear that creditors are entitled to summary judgment in a suit on an unconditional guaranty when the guarantor has waived all of his defenses.[12] It is also axiomatic that "[c]ompetent parties are free to choose, insert, and agree to whatever provisions they desire in a contract unless prohibited by statute or public policy."[13] Thus, because Delonga failed to assert any defense based upon an alleged incompetency to enter into a contract at the time he executed the guaranty, and because he failed to show that the guaranty's broad waiver of defenses was prohibited by statute or public policy, he is bound thereby.

(c) Still, Delonga argues that, regardless of whether the guaranty was valid as to the original note, it did not apply to the note modification, which he refers to as the "New Promissory Note," because there is nothing in that document that references or incorporates his personal guaranty, nor was he asked to sign the

---

[11] (Punctuation and footnote omitted.) *Collins v. Regions Bank*, 282 Ga. App. 725, 726 (639 SE2d 626) (2006). See also *Rodgers v. First Union Nat. Bank &c.*, 220 Ga. App. 821, 822 (1) (470 SE2d 246) (1996) ("When signatures on a negotiable instrument are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense.") (citation and punctuation omitted).

[12] See *Brookside Communities*, 268 Ga. App. at 786-787 (1).

[13] (Citation and punctuation omitted.) Id. at 786 (1).

document in his personal capacity as a guarantor.

(i) There was no need, however, for the appellees to inform Delonga that they intended for the guaranty to apply to the note modification. As shown above, the guaranty expressly allowed the appellees to, "at any time, and from time to time, *without notice to or further consent from Guarantor*, either with or without consideration, . . . modify the terms of the Note or the Loan Documents; [or] extend or renew the Note for any period[.]"[14] This language is unambiguous and clearly applies to the modification of the original promissory note at issue here.

(ii) Further, there was no need for the Modification to Promissory Note to refer to Delonga or his personal guaranty. The original note specifically defined "Loan Documents" as including Delonga's personal guaranty, and the note modification expressly stated that "[a]ll other terms and conditions of the Note remain in full effect and are not modified by this agreement."

(d) Delonga also complains that the court erred when it ruled that the note modification was simply a modification of certain terms of the original note instead of a novation[15] that substantially increased his personal liability under the guaranty and, therefore, discharged him as a guarantor.

(i) The Modification to Promissory Note, however, specifically stated that "Accrued interest [on the original loan amount], through the date of this modification has been added to the Original Loan Amount resulting in a modified loan amount of EIGHT HUNDRED-TWELVE THOUSAND, FIVE HUNDRED AND NO/100 DOLLARS ($812,500.00) ('Modified Loan Amount')." Clearly, at the time Delonga executed the note modification on behalf of Core LaVista, he was *already* personally obligated to pay the appellees, pursuant to the guaranty, $812,500 — the original principal amount plus the accrued interest. Therefore, there is no merit to Delonga's contention that, at the time he executed the note modification, such modification contemporaneously increased his contractual obligations to the appellees.

(ii) Moreover, although a surety can be discharged by an increase of risk[16] or a novation, "a party may consent in advance to the conduct of future transactions and will not be heard to claim his own

---

[14] (Emphasis supplied.)

[15] Under OCGA § 10-7-21, "[a]ny change in the nature or terms of a contract is called a 'novation' [and] such novation, without the consent of the surety, discharges him."

[16] Under OCGA § 10-7-22, "[a]ny act of the creditor, either before or after judgment against the principal, which injures the surety or increases his risk or exposes him to greater liability shall discharge him[.]"

discharge upon the occurrence of that conduct."[17] Given the unambiguous language of the guaranty in this case, no issue of fact exists as to whether Delonga was discharged by any increased risk or a purported novation, because he voluntarily and explicitly agreed in advance to the modification of the original note.[18]

2. Core LaVista and Delonga contend that the trial court erred by awarding the appellees attorney fees because the appellees failed to provide sufficient and timely notice of their intent to pursue such fees, as required by OCGA § 13-1-11. We agree.

OCGA § 13-1-11 (a) provides as follows, in relevant part:

> Obligations to pay attorney's fees upon any note or other evidence of indebtedness . . . shall be valid and enforceable and collectable as a part of such debt . . . subject to the following provisions: . . .
>
> (3) The holder of the note or other evidence of indebtedness or his or her attorney at law *shall, after maturity of the obligation, notify in writing* the . . . party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced *and* that such . . . party sought to be held on said obligation has ten days from the receipt of such notice to pay the principal and interest *without the attorney's fees*. If the maker, endorser, or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, *then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement.*[19]

Here, the record in this case shows that, in the promissory note and guaranty, Core LaVista and Delonga, respectively, agreed to pay the lender all costs of collection (including reasonable attorney fees actually incurred and litigation expenses) if an attorney assisted in collecting on the note. Then, on December 15, 2008, after Core LaVista defaulted on the note, the appellees sent letters to Delonga, individually as well as in his capacity as the manager of Core LaVista, notifying him that he was in default on the note and guaranty.

---

[17] (Citation and punctuation omitted.) *Fielbon Dev. Co. v. Colony Bank of Houston County*, 290 Ga. App. 847, 854 (2) (b) (660 SE2d 801) (2008).

[18] Id. See *Underwood v. Nationsbanc Real Estate Svc.*, 221 Ga. App. 351, 353 (471 SE2d 291) (1996) (accord); *Ramirez v. Golden*, 223 Ga. App. 610, 611-612 (478 SE2d 430) (1996) (accord).

[19] (Emphasis supplied.)

According to one of the letters,

> Lender has given a prior written notice of default on September 2, 2008,[20] and pursuant to Section 5 (A) of the Note and Section 2.02 of the Security Deed[21] is not required to provide any additional notice regarding additional events of default. However, *in order to provide you with the opportunity to cure these defaults*, we are hereby notifying you about these additional defaults and we request that these defaults be cured immediately.
>
> Be advised that Lender intends to avail himself of all remedies available to him under the terms of the Note, the Security Deed, as well as the Unconditional Guaranty of Payment and Performance signed by you in connection with the extension of credit by Lender to Borrower.[22]

This language was not sufficient to satisfy the requirements of OCGA § 13-1-11. By the terms of OCGA § 13-1-11 (a), compliance with that Code section is a statutory prerequisite to collecting an otherwise valid obligation to pay attorney fees incurred in the collection on a note. If the debtor cures the debt in compliance with the requisite ten-day notice period, "then the obligation to pay the attorney's fees *shall be void and no court shall enforce the agreement*."[23] This is true as a matter of statutory law, regardless of whether the parties agreed to such a ten-day grace period.[24] Therefore, OCGA § 13-1-11 (a) (3) creates a mandatory condition precedent to the debtor's obligation to pay attorney fees expended by the lender while collecting on a note.[25]

Georgia case law requires only substantial compliance with OCGA § 13-1-11 (a) (3), and this Court has construed substantial compliance to include notice as follows: "So long as a debtor is informed that he has 10 days from receipt of [the] notice within which to pay principal and interest *without incurring any liability for*

---

[20] The September 2008 notice of default is not in the appellate record. The notice, however, was relevant to the original note, which had a maturity date of August 31, 2008. Subsequent to this purported default, the parties executed the "Modification to Promissory Note," which extended the maturity date of the note to February 28, 2009.

[21] The referenced security deed is not in the appellate record.

[22] (Emphasis supplied.)

[23] OCGA § 13-1-11 (a) (3).

[24] See, e.g., *Miller v. Roberts*, 9 Ga. App. 511, 515 (71 SE 927) (1911) (agreement in original debt to waive the statutory notice was void as against public policy).

[25] See *Strickland v. Williams*, 215 Ga. 175, 178 (2) (109 SE2d 761) (1959) ("Under a contract to pay attorney's fees if the note or other obligation be collected by or through an attorney, only a contingent liability is created for the payment of attorney's fees.") (punctuation omitted).

*attorney fees*[,] the legislative intent behind the enactment of OCGA § 13-1-11 (a) (3) has been fulfilled.''[26] Here, the demand letters did not satisfy this requirement, because the letters did not state that Delonga could avoid his obligation to pay attorney fees by curing his default within ten days of the notice, as required by the statute. Likewise, the complaint itself (with attached exhibits) did not satisfy the notice requirement because it incorporated a deficient demand letter, referred to the fact that the defaults ''have not been cured within ten (10) days of the [demand letter], pursuant to [OCGA §] 13-1-11,'' and alleged that therefore ''the Lender *is entitled* to recover their reasonably incurred attorneys' fees and expenses of litigation.''[27] Incorporating the deficient demand letter did not cure the letter's lack of notice, and rather than notifying Delonga that he had an opportunity to avoid paying attorney fees by timely curing the default, the complaint stated the opposite, i.e., that ''the Lender *is entitled* to recover reasonably incurred attorneys' fees.''[28]

Furthermore, the debt instruments themselves, including the note, the note modification, and the personal guaranty, did not satisfy the notice requirement because OCGA § 13-1-11 (a) (3) requires that the holder of the note ''shall, *after maturity of the obligation*, notify in writing''[29] the debtor of his intention to enforce the debtor's existing obligation to pay attorney fees *and that the debtor can avoid this obligation by curing his default within ten days of the notice*. Therefore, the statute plainly requires a separate notice in writing after maturity, and in light of the inadequacy of the demand letters and complaint in this case, it would be error to conclude that the debt instruments themselves in some way satisfied this requirement. Therefore, we conclude that the trial court erred by awarding attorney fees pursuant to the note.

*Judgment affirmed in part and reversed in part. Ellington, C. J., and Andrews, J., concur.*

DECIDED MARCH 25, 2011.

*Stone & Bellus, John E. Bellus, Jr.*, for appellants.

---

[26] (Punctuation omitted; emphasis supplied.) *Trust Assoc. v. Snead*, 253 Ga. App. 475, 477 (1) (c) (559 SE2d 502) (2002).

[27] (Emphasis supplied.) Compare *Upshaw v. Southern Wholesale Flooring Co.*, 197 Ga. App. 511, 513-514 (4) (398 SE2d 749) (1990) (''Where a pleading, setting up a claim on a note or other evidence of indebtedness which authorizes recovery of attorney's fees, alleges that notice is thereby given, *and the attached notice otherwise conforms to the requirements of OCGA § 13-1-11 (a) (3)*, such notice is sufficient to authorize an award of attorney's fees.'') (punctuation omitted; emphasis supplied).

[28] (Emphasis supplied.)

[29] (Emphasis supplied.)

*Schulten, Ward & Turner, Dean R. Fuchs*, for appellees.