**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 9, 2013**

# In the Court of Appeals of Georgia

A13A0409. FLETCHER v. C. W. MATTHEWS CONTRACTING
    COMPANY, INC.

ANDREWS, Presiding Judge.

This appeal arises from an action by materials supplier C. W. Matthews Contracting Co., Inc., to recover on a guaranty made by Larry Fletcher. Following a jury verdict and the entry of judgment for C. W. Matthews, Fletcher moved for a judgment notwithstanding the verdict or, in the alternative, a new trial. Fletcher claims that the trial court erred in denying his motion because the evidence demanded a verdict contrary to that returned by the jury, and, if not, the trial court's errors in charging the jury, among other things, required a new trial. We agree with Fletcher that there was no evidence of his bad faith which could support the jury's award of attorney fees under OCGA § 13-6-11, and that the trial court erred in failing to grant

his motion for judgment notwithstanding the verdict as to that claim. But for the reasons set forth below, we conclude that Fletcher's other claims of error are without merit. Accordingly, we affirm in part and reverse in part.

"There is a presumption in favor of the validity of verdicts. And after rendition of a verdict, all the evidence and every presumption and inference arising therefrom, must be construed most favorably towards upholding the verdict." (Citation and punctuation omitted.) *Williamson v. Strickland & Smith, Inc.*, 263 Ga. App. 431 (587 SE2d 876) (2003). So viewed, the evidence shows that Fletcher, Glenn Neely, and others formed N & N Partners, LLC, in or about 2007. C. W. Matthews sued N & N on an open account for failure to pay for materials C. W. Matthews sold to N & N. Fletcher was named as a co-defendant based on his personal guaranty of N & N's obligations. The trial court awarded summary judgment to C. W. Matthews on its claims against N & N, and the case against Fletcher proceeded to a jury trial.

The testimony at trial largely concerned Fletcher's guaranty. C. W. Matthews required, according to its manager, that N &N provide a completed credit application and an individual guaranty as part of becoming a customer to buy hot mix asphalt. A form guaranty was submitted by C. W. Matthews to N & N. Fletcher signed the

guaranty, and it was returned to C. W. Matthews along with the credit application. C. W. Matthews then opened an account for N & N to draw asphalt.

The form guaranty was styled "Individual Gaurantee [sic]" It included several blank lines. Three of these lines had "Company Name" printed thereunder, and these lines were filled in by hand as "N & N Partners, LLC Dba N & N Asphalt." One line in the body of the guaranty had "Individual" printed under it and was filled in by hand as "Glenn Neely/Larry Fletcher." The signature line was in blank with "Individual" printed under it, and that is where Fletcher placed his signature.

As completed, the guaranty, dated June 12, 2007, provided in pertinent part that in consideration of credit "heretofore or hereafter executed to" N & N by C. W. Matthews, "I Glenn Neely/Larry Fletcher, hereby unconditionally bind myself as Guarantor for the full and prompt payment when due of any and all amounts for which [N & N] may become indebted to C. W. Matthews [], or their assign." Further, the guaranty provided that "I make myself primarily liable for such indebtedness," without the need for C. W. Matthews first having to proceed against N & N, and that "I may be sued 'severely from' as well as 'jointly and severely with'" N & N. At the bottom of the guaranty it is stated, in bold print: "If Application is not completed in its entirety it can *not* be processed." There is no "merger clause" providing that the

3

guaranty contained the entirety of the parties' agreement. According to Fletcher, Neely's wife filled in the blanks on the guaranty. Neely never signed the guaranty, but, according to Fletcher, "I thought he was going to."

After C. W. Matthews received the credit application and the signed guaranty, its credit manager sent N & N a letter that stated, among other things, "[y]our account has been approved with a $40,000 limit." Following submission of the credit application, a handwritten note stating "Credit Limit $40,000" was also placed thereon by a C. W. Matthews representative. There was, however, no specific credit limit specified in the credit application as submitted to C. W. Matthews. Fletcher testified that his understanding was that his limit of liability would be $40,000 and that he would not have signed the guaranty if he had thought it was unlimited.

Notwithstanding the credit limit, N & N ordered more than $40,000 worth of material from C. W. Matthews. According to the testimony of C. W. Matthews's representative, as of the day of trial N & N owed $126,428.28 on the account guaranteed by Fletcher. After C. W. Matthews rested its case, Fletcher moved for a directed verdict on the issues of its liability for damages and for attorney fees, which the trial court denied. The jury found in favor of C. W. Matthews and awarded $135,982.63 in compensatory damages, interest in the amount of $24,698.33, and

4

attorney fees in the amount of $3,614.52. Fletcher moved for judgment notwithstanding the verdict (j.n.o.v.) or, in the alternative, for a new trial. The trial court denied Fletcher's motion, but, with consent of C. W. Matthews, reduced the principal amount of the judgment to $126,428.28. Fletcher appeals.

1. Fletcher contends that the trial court erred in denying his motion j.n.o.v. because the evidence demanded a verdict contrary to that returned by the jury. A motion for directed verdict or j.n.o.v. is properly granted where "there is no conflict in the evidence as to any material issues and the evidence (construed in favor of the nonmovant) demands a particular verdict." (Citation and punctuation omitted.) *Hart v. Shergold*, 295 Ga. App. 94, 96 (1) (670 SE2d 895) (2008). Accordingly, the appellate standard of review of the denial of a motion for directed verdict or for j.n.o.v. is the any evidence test. Id.

(a) Fletcher contends that the trial court erred in denying his motion j.n.o.v. because C. W. Matthews failed to meet its burden of proving an enforceable contract. He argues that C. W. Matthews failed to refute Fletcher's testimony that it was an essential term of the agreement that Neely sign the guaranty as a co-surety. It follows, Fletcher asserts, that there was no meeting of the minds and no contract to enforce.

5

In order to make a binding contract, "[b]oth parties must assent to the same thing." (Citation and punctuation omitted.) *Harry Norman & Assoc. v. Bryan*, 158 Ga. App. 751, 753 (1) (282 SE2d 208) (1981). See *Guggenheimer & Co. v. Gilmore*, 29 Ga. App. 540, 541 (116 SE 67) (1923) (finding that "[i]n contracts of guaranty, as in all other contracts, in order for the terms of the agreement to be effective, there must be an actual meeting of the minds of the parties upon the same thing and in the same sense"). Sometimes "the only conduct of the parties manifesting intent is the express language of the agreement," but "[i]n other instances, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement." *Cox Broadcasting Corp. v. Nat. Collegiate Athletic Assn.*, 250 Ga. 391, 395 (297 SE2d 733) (1982) (finding that "[t]he parties agreed to the language of the contract . . . [but] it is clear that when the contract was executed the parties did not agree as to what they intended by this language"). And "[w]here such extrinsic evidence exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury." (Citation and punctuation omitted) *Terry Hunt Constr. Co. v. AON Risk Svcs.*, 272 Ga. App. 547, 552 (3) (613 SE2d 165) (2005).

Looking first to the express language of the guaranty, the document is replete with express promises of the signatory, "I," and Fletcher knew, as he testified, that he was signing a document providing, among other consistent undertakings, that "I make myself primarily liable for such indebtedness." Further, there is nothing in the guaranty expressly providing that any promise of a signatory is contingent upon there being two guarantors. Nevertheless, according to Fletcher, his understanding was that the guaranty was not complete until signed by Neely, and that he would not have signed as sole guarantor. In that respect, the guaranty does identify the guarantor as "Glenn Neely/Larry Fletcher." But the circumstances surrounding the guaranty's making also show that the guaranty form Fletcher signed was on its face designed to be executed by one guarantor. Neither C. W. Matthews or Fletcher, but a third party, wrote in "Glenn Neely/Larry Fletcher" over the line "individual." And Fletcher acknowledged that his association with N & N began in 2007 when "Neely had fallen on some pretty hard financial times," and Fletcher and others had "paid off [Neely's] loans," matters which the jury might find inconsistent with Fletcher's claim that he thought Neely's participation as co-surety was essential. There is at least some evidence from which a jury could conclude that Fletcher never intended that his obligations were contingent upon Neely signing the guaranty as co-surety and that

7

there was, rather, a meeting of the minds when upon receipt of the guaranty signed by Fletcher, C. W. Matthews extended credit to N & N.

(b) Fletcher also claims that the trial court erred in denying his motion j.n.o.v. because C. W. Matthews's failure to procure Neely as a co-surety was either a change in the contract terms without Fletcher's consent or a release of a co-surety, thereby discharging Fletcher from liability. See OCGA §§ 10-7-20; 10-7-21. But this argument assumes that there was an agreement that Neely act as co-surety, or that Neely was a co-surety. For the reasons discussed in Division 1 (a), supra, the evidence did not require such a conclusion.

(c) Fletcher argues that the trial court erred in denying his motion j.n.o.v because C. W. Matthews failed to prove the correct amount due and should not have been awarded damages. We disagree. C. W. Matthews's manager testified that the principal balance on N & N's account as of the date of trial was $126,428.28. C. W. Matthews also introduced into evidence the invoices it had generated and submitted to N & N in connection with N & N's asphalt purchases. On cross-examination, the manager explained that the original complaint alleged a greater amount due because C. W. Matthews thereafter "received some additional small amount of payments . . . close to $10,000," by reasons of a materialman's lien, and that "we gave full credit

8

for any payment we received on the account." Although Fletcher maintains that C. W. Matthews did not properly credit N & N's account for monies it received from property owners, there was at least some evidence as to the correct amount of the indebtedness guaranteed by Fletcher, and the trial court did not err in failing to grant Fletcher's motion j.n.o.v. See, e.g., *Multimedia Technologies v. Wilding*, 262 Ga. App. 576, 579 (2) (b) (586 SE2d 74) (2003) (finding that, as there was some evidence of damages for breach of contract, trial court properly denied appellant's motion j.n.o.v.).

(d) Fletcher further claims that the trial court erred in failing to grant his motion j.n.o.v. on C. W. Matthews's claim for bad faith attorney fees under OCGA § 13-6-11. We agree.

C. W. Matthews asserted a claim for attorney fees pursuant to OCGA § 13-6-11. This provision provides, in relevant part, that while litigation expenses are generally not part of damages, "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." Id. After C. W. Matthews had presented its case, Fletcher

moved for directed verdict on the attorney fees claim on the ground that there was no evidence of his bad faith.[1]

Conduct authorizing a fee award under OCGA § 13-6-11 must arise "from the transaction underlying the cause of action being litigated, not conduct during the course of the litigation itself." *David G. Brown, P.E.*, 274 Ga. at 850. And "[b]ad faith *other than mere refusal to pay a just debt* is sufficient, provided it is not prompted by an honest mistake as to one's rights or duties but by some interested or sinister motive." (emphasis supplied; citation and punctuation omitted.) *Young v. A.L. Anthony Grading Co.*, 225 Ga. App. 592, 593 (484 SE2d 318) (1997). Thus, bad faith "may be found in defendant's carrying out the provisions of the contract, that is, in how defendant acted in his dealing with the plaintiff." (Citation and punctuation omitted.) *Wheat Enterprises v. Redi-Floors*, 231 Ga. App. 853, 857 (1) (c) (501 SE2d 30) (1998).

---

[1] In addition to bad faith, "statutory recovery for stubborn litigiousness or causing unnecessary trouble and expense is authorized if there exists no bona fide controversy or dispute regarding liability for the underlying cause of action." *David G. Brown, P.E. v. Kent*, 274 Ga. 849, 850 (561 SE2d 89) (2002). C. W. Matthews does not contend that there was no bona fide dispute regarding liability such that the jury's attorney fee award was authorized for other than bad faith.

We fail to identify any evidence that Fletcher breached the guaranty in bad faith or otherwise acted in bad faith in the contractual relations underlying the cause of action. C. W. Matthews points out that Fletcher's company, Southern Crescent Site Development, performed work on the Coweta County airport project. Southern Crescent then hired N & N to work on the same project. Southern Crescent was paid for its work and in turn paid N & N, but N & N never paid C. W. Matthews for the materials it ordered and used on the project. C. W. Matthews argues that this "inexplicable chain of events" shows Fletcher's bad faith. But as noted above, bad faith must constitute more than refusal to pay a just debt. See *Young*, 225 Ga. App. at 593. Even if we assume that N & N's failure to pay C. W. Matthews for reasons unknown could be evidence of bad faith on N & N's part, Fletcher was a *guarantor* whose company fulfilled its obligations to N & N and who was not shown to have contributed to N & N's failure to pay. Further, the evidence showed that it was Neely who ordered the materials on N & N's behalf and there is a lack of evidence that Fletcher controlled N & N's work. Compare, e.g., *Wheat Enterprises*, 231 Ga. App. at 857 (1) (c) (creditor discussed additional work with debtor); *Young*, 225 Ga. App. at 593 (defendant controlled the manner and method of the work performed).

C. W. Matthews also points out that Fletcher took the position at trial that his guaranty was limited to $40,000, a position which C. W. Matthews characterizes as "not tenable" and shows Fletcher's bad faith. But C. W. Matthews cannot rely on Fletcher's conduct in the litigation to show bad faith for purposes of OCGA § 13-6-11. See *David G. Brown, P.E.*, 274 Ga. at 850. As "there was no evidence from which a jury could find that the [guaranty] was made in bad faith or that [Fletcher] breached it as a result of some sinister motive," there was no evidence from which a jury could award attorney fees on account of Fletcher's bad faith. *Glen Restaurant v. West*, 173 Ga. App. 204, 205 (325 SE2d 781) (1984). It follows that the trial court erred by failing to grant Fletcher's motion j.n.o.v. on C. W. Matthews's claim for attorney fees. See id.

2. Fletcher claims that the trial court erred in denying its motion for a new trial. Generally, "[a]s long as there is some evidence to support the verdict, the denial of defendant's motion for new trial will not be disturbed." (Citation omitted.) *Habel v. Tavormina*, 266 Ga. App. 613, 618 (3) (597 SE2d 645) (2004).

(a) Fletcher maintains that he was entitled to a new trial because the principal amount of damages awarded did not conform to the evidence, the trial court

12

improperly charged the jury as to the amount of damages sought, and the interest awarded was arbitrary and not based on the evidence. We disagree.

(i) The jury returned a verdict which included an award of compensatory damages in the amount of $135,982.63, and the trial court initially entered judgment against Fletcher consistent therewith. The trial court, however, had inadvertently instructed the jury as to the amounts C. W. Matthews claimed it was owed at the time it filed the action, which included unpaid principal of $135,982.63. C. W. Matthews had contended at trial that the unpaid principal was only $126,428.28, and it had presented evidence to support that lesser claim. Accordingly, with C. W. Matthews's consent, the trial court reduced the principal amount of the judgment to $126,428.28.

Fletcher contends that inasmuch as the jury's verdict may not be substantively amended after the jury has disbursed, the trial court was required to order a new trial. See OCGA § 9-12-7; *Force v. McGeachy*, 186 Ga. App. 781, 784 (1) (368 SE2d 777) (1988). But the prohibition against the amendment of verdicts does not preclude a trial court from writing off the illegal portion of the verdict. See OCGA § 9-12-8; *Kimble v. Kimble*, 240 Ga. 100, 102 (2) (239 SE2d 676) (1977). In that respect, "[a] verdict which is erroneous may be corrected by the writing off of the illegal part if the illegal part can be determined and is separable from the rest." *Reserve Life Ins. Co.*

13

*v. Gay*, 214 Ga. 2, 3 (102 SE2d 492) (1958). See *Dearing & Dearing Enterprises v. A. R. III, Inc.*, 205 Ga. App. 386 (422 SE2d 284) (1992) (finding that "[a] trial court is authorized to order a write-off as to that portion of a verdict which it finds to be illegal"). Here, the illegal portion of the jury's verdict can be determined and is separable from the rest because it included a specific award corresponding to the unpaid principal. The only reasonable inference is that the jury was seeking to return a verdict for the total unpaid principal, but its award was greater than what C. W. Matthews had actually requested. See, e.g., *Fidelity & Cas. Co. v. Mangum*, 102 Ga. App. 311, 316-317 (9) (116 SE2d 326) (1960) (where a portion of the verdict was unrecoverable, but the excess determinable, judgment overruling new trial would be affirmed if plaintiff agreed to write off the excess). The trial court properly wrote off the illegal portion of the verdict and reduced the principal amount of the judgment to $126,428.28, thereby reflecting the principal amount claimed and substantiated by C. W. Matthews at trial. We find no error.

(ii) As noted above, the trial court inadvertently instructed the jury as to C. W. Matthews's pre-trial claims. The trial court was nevertheless able to correct the instruction's likely effect on the outcome of the proceedings when it eliminated the illegal portion of the jury's verdict. Fletcher never objected to the charge. Under the

14

circumstances, the charge "was not so harmful as to be reversible in the absence of an objection." *Kitchin v. Reidelberger*, 311 Ga. App. 135, 136 (2) (714 SE2d 361) (2011). See OCGA § 5-5-24 (a) (unless otherwise provided, "in all civil cases, no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto before the jury returns its verdict"); OCGA § 5-5-24 (c) (providing for review of "substantial error in the charge which was harmful as a matter of law," regardless of objection).

(iii) Fletcher further asserts that he is entitled to a new trial because the jury's interest award was arbitrary and not based on the evidence. C. W. Matthews sought collection of commercial interest which had accrued on N & N's unpaid invoices. See OCGA § 7-4-16 (providing, in part, that "owner of a commercial account may charge interest on that portion of a commercial account which has been due and payable for 30 days or more at a rate not in excess of 1½ percent per month calculated on the amount owed from the date upon which it became due and payable until paid"). The jury awarded interest in the amount of $24,698.33, although C. W. Matthews had asked for $59,168.43. Although it is not readily apparent how the jury arrived at its figure, it was within the range of the evidence. And "a defendant cannot complain that the plaintiff was entitled to more or nothing at all." *CRS Sirrine v. Dravo Corp.*,

15

219 Ga. App. 301, 304 (1) (464 SE2d 897) (1995). We find no error in the denial of a new trial.

(b) Fletcher argues that the trial court's jury charge on waiver was improper and requires a new trial. Again, we disagree.

Fletcher objected to the trial court's charge to the jury that, "[a]lthough a guarantor may be discharged by an increase of risk or a novation, a party may waive his right to be discharged by an increase of risk or a novation if that party, through his conduct, assents to the increased risk or novation." Fletcher suggests that the protections granted by OCGA § 10-7-21 ("[a]ny change in the nature or terms of a contract is called a 'novation'; such novation, without the consent of the surety, discharges him") and OCGA § 10-7-22 ("[a]ny act of the creditor . . . which injures the surety or increases his risk or exposes him to greater liability shall discharge him") cannot be waived by conduct. However, "the protection of [these] Code sections can be waived by the guarantor's consent to a novation or additional risk." *Underwood v. Nationsbanc Real Estate Svc.*, 221 Ga. App. 351, 353 (471 SE2d 291) (1996). Such consent can be given in advance within the guaranty. Id. And consent can also be shown by a guarantor's other conduct. See *Builders Dev. Corp. v. Hughes Supply*, 242 Ga. App. 244, 245 (529 SE2d 388) (2000) (in considering if the builder's

16

guarantor consented to the increased risk when the supplier extended additional credit to the builder, it was relevant that the guarantor "continued to accept credit extended to the [builder] on the strength of his guaranty," rather than exercising his right to terminate advances); *South Atlanta Assoc. v. Strelzik*, 192 Ga. App. 574, 576 (2) (385 SE2d 439) (1989) (where evidence showed that a guarantor returned a guaranty to the beneficiary with two guarantor signatures, not the three guarantors previously contemplated, it was for the trier of fact to determine if guarantor had thereby consented to an alteration of the guaranty). Thus, the charge was not an improper statement of the law, as Fletcher asserts. And "a charge may be given when there is slight evidence to sustain it." *AT Systems Southeast v. Carnes*, 272 Ga. App. 671, 674 (3) (b) (613 SE2d 150) (2005). Evidence pertinent to whether Fletcher consented to guarantee more than the $40,000 in credit initially extended by C. W. Matthews to N & N includes, for instance, evidence of Fletcher's conduct in signing a guaranty contemplating that for "credit heretofore or hereafter executed," he would be unconditionally bound to pay "any and all amounts" for which N & N "may become indebted" to C. W. Matthews. We find no error.

(c) Fletcher also objected to the trial court's failure to charge the jury, as he requested, that Georgia adheres to the principle that a contract is construed against

the drafter. "In order for a refusal to charge to be error, the requests must be entirely correct and accurate, and adjusted to the pleadings, law, and evidence, and not otherwise covered in the general charge." (Citation and punctuation omitted.) *Brown v. Mann*, 237 Ga. App. 247, 250 (2) (b) (514 SE2d 922) (1999). While C. W. Matthews provided the form guaranty, it was not the author of the disputed provision identifying the guarantor as "Glenn Neely/Larry Fletcher." See generally *J & E Builders v. R C Dev.*, 285 Ga. App. 457, 458 (1) (646 SE2d 299) (2007) (ambiguity should be resolved most strongly against the drafter of the contract). Given the evidence presented, Fletcher's request to charge was misleading and the trial court did not err in refusing to give it. See, e.g., *Brown v. State*, 232 Ga. App. 787, 790 (1) (d) (504 SE2d 452) (1998) (trial court may refuse to give confusing or misleading request to charge).

(d) Fletcher further contends that he was entitled to a new trial because the jury's verdict as to the amount of attorney fees was arbitrary and not based on the evidence. In view of our findings in Division 1 (d), supra, this issue is moot.

*Judgment affirmed in part and reversed in part. Dillard and McMillian, JJ., concur.*

18