**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**September 5, 2013**

# In the Court of Appeals of Georgia

A13A0876. WOODEN v. SYNOVUS BANK.

MCFADDEN, Judge.

Howard Wooden appeals from the trial court's order granting summary judgment to Synovus Bank both on the bank's action against him on a promissory note that he had personally guarantied and on his counterclaim against the bank for intentional interference with business relations. As detailed below, the bank has presented a prima facie case for enforcing the note; and Mr. Wooden has not demonstrated his claimed affirmative defense of novation. In addition, Mr. Wooden's guaranty authorized the bank to engage in the acts that he claims constituted intentional interference. Accordingly, we affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant of

summary judgment de novo, construing the evidence in favor of the nonmovant." *Secured Realty & Investments v. Bank of North Georgia*, 314 Ga. App. 628 (725 SE2d 336) (2012) (citation and punctuation omitted).

So viewed, the evidence shows that Mr. Wooden was a member of Wooden Nickel Plantation, LLC ("Wooden Nickel"). On September 24, 2009 Wooden Nickel borrowed $2,450,852.82 from the bank's predecessor-in-interest and entered into a promissory note for that amount. Mr. Wooden signed a personal guaranty of the indebtedness. Two other persons affiliated with Wooden Nickel also signed personal guaranties.

Wooden Nickel defaulted on the loan. Without Mr. Wooden's knowledge, the bank entered into a settlement with the two other guarantors, releasing them from liability on their personal guaranties in exchange for payments that were applied to the outstanding loan balance. It then brought an action on the note against Wooden Nickel and Mr. Wooden. Mr. Wooden answered, asserting the affirmative defense of novation based upon the bank's settlement with the other guarantors; he also asserted a counterclaim for intentional interference with business relations based upon the bank's settlement with the other guarantors. Wooden Nickel initially answered the bank's complaint as well, but then withdrew its answer. The trial court entered a

default judgment against Wooden Nickel and granted summary judgment to the bank on both its claim against Wooden and Wooden's counterclaim.

1. *Claim on promissory note.*

The bank produced the promissory note that it seeks to enforce, and there is no dispute either that Wooden Nickel, through its members, executed the note or that Mr. Wooden executed a personal guaranty of the indebtedness created by that note. Accordingly, the bank established a prima facie case for enforcing the note against Mr. Wooden. See *Shropshire v. Alostar Bank of Commerce*, 314 Ga. App. 310, 315 (3) (724 SE2d 33) (2012); *Core LaVista, LLC v. Cumming*, 308 Ga. App. 791, 795 (1) (b) (709 SE2d 336) (2011). This shifted the burden to Mr. Wooden to establish an affirmative defense to the claim on the note. See *Han v. Han*, 295 Ga. App. 1, 3 (2) (670 SE2d 842) (2008).

He has asserted the affirmative defense of novation. See OCGA § 10-7-21 ("Any change in the nature or terms of a contract is called a 'novation'; such novation, without the consent of the surety, discharges him."). He argues that a fact question exists as to whether the bank's settlements with the other two guarantors effectively changed the terms of the original promissory note, thereby releasing him from his obligations under the note.

3

"In every novation there are four essential requisites: (1) a previous valid obligation, (2) the agreement of all the parties to the new contract, (3) the extinguishment of the old contract, and (4) the validity of the new one. If these essentials, or any one of them, are wanting, there can be no novation." *Brown v. Lawrenceville Properties*, 309 Ga. App. 522, 524 (1) (710 SE2d 682) (2011) (citation and punctuation omitted). Accord *Georgialina Enterprises v. Frakes*, 250 Ga. App. 250, 253 (551 SE2d 95) (2001). But Mr. Wooden has pointed to no new contract, to which the bank and Wooden Nickel agreed, that served to extinguish and replace the promissory note; so the promissory note continued to reflect Wooden Nickel's obligation to repay the loan the bank made to it. Likewise, Mr. Wooden has pointed to no new contract between himself and the bank that served to extinguish and replace his guaranty. Although he argues that the other guarantors' releases served to increase the amount of risk to which he was exposed under his guaranty, see OCGA § 10-7-22 (act of creditor that increases surety's risk or exposes him to greater liability shall discharge him), the language of Mr. Wooden's guaranty unambiguously and unconditionally obligated him – individually – to pay the *entire* amount of Wooden Nickel's indebtedness should it default on its loan from the bank. Thus, the releases did not increase Mr. Wooden's risk under the guaranty. Notwithstanding this

4

language, he argues that the releases went against understandings he had with the other guarantors. But we cannot look to extrinsic evidence to vary the unambiguous terms of Mr. Wooden's guaranty. See *Infinity Gen. Ins. Co. v. Litton*, 308 Ga. App. 497, 502 (2) (707 SE2d 885) (2011).

Even if we assume, arguendo, that a lender's release of some guarantors to a promissory note could be viewed as extinguishing the promissory note and creating a new agreement, as required for a novation, in this case Mr. Wooden waived his right to raise a novation defense by consenting to the bank's release of the other two guarantors. A guarantor can consent to a novation, and such "consent can be given in advance, even at the time the guaranty is signed." *Underwood v. NationsBanc Real Estate Svc.*, 221 Ga. App. 351, 353 (471 SE2d 291) (1996) (citations omitted). Accord *Fletcher v. C. W. Matthews Constr. Co.*, __ Ga. App. __, __ (2) (b) (__ SE2d __) (Case No. A13A0409, decided July 9, 2013). The guaranty that Mr. Wooden signed was unconditional, and it included the following language:

> The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do . . . ): . . . any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor . . . .

The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of . . . release[ ] . . . which may be available to Borrower or any such other person liable in respect of any indebtedness[.]

Mr. Wooden argues that this language was not consent to a novation because it did not expressly mention that defense. See *Jones v. Dixie O'Brien Div., O'Brien Corp.*, 174 Ga. App. 67, 69 (2) (329 SE2d 256) (1985) (finding guaranty's waiver of "notice of acceptance of the guaranty, and all notice of the goods and merchandise sold by you to said debtor, and all notice of defaults by said debtor, and . . . consent to any extension of the time of payments" did not constitute consent to a failure of consideration because "there was no express waiver of the defense of consideration") (citations and punctuation omitted). But this language did expressly give the bank the authority to settle with and release other guarantors and it did expressly waive any defenses based on such releases. Consequently, even if the bank's release of the other guarantors could be construed as a novation, this unambiguous language functioned as a consent by Mr. Wooden to that action. See *Fielbon Dev. Co. v. Colony Bank of Houston County*, 290 Ga. App. 847, 854 (2) (b) (660 SE2d 801) (2008); *Underwood*,

6

221 Ga. App. at 353. "Given the language of the guaranty in this case, no issue of fact existed as to whether [Mr. Wooden] was discharged by . . . any purported novation [caused by the bank's settlements and releases of the other guarantors] because he agreed in advance to the risk that the bank would take such actions." *Fielbon Dev. Co.*, 290 Ga. App. at 854 (2) (b) (citations omitted).

Accordingly, the trial court did not err in granting summary judgment to the bank on its claim on the promissory note.

2. *Counterclaim for intentional interference with business relations.*

Mr. Wooden based his claim for intentional interference with business relations on the bank's act of settling with the other two guarantors and releasing them from liability on the promissory note. But, as cited above, the guaranty that he signed unambiguously authorized the bank to enter into a settlement and release with any other guarantor.

> In order to state a claim under a theory of intentional interference with business relations, it is necessary to show, in part, that the alleged intermeddler acted improperly and without privilege. . . . Since the bank merely asserted its contractual rights [to enter into settlements and releases with the other guarantors], the trial court correctly granted summary judgment as to the counterclaim for tortious interference with business relations.

7

*Russell Corp. v. Bancboston Financial Co.*, 209 Ga. App. 660, 663 (4) (434 SE2d 716) (1993) (citations omitted).

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*