**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 22, 2013**

# In the Court of Appeals of Georgia

A13A0982. KELLEY v. COOPER.

BRANCH, Judge.

Following a bench trial, the trial court awarded Melissa Cooper damages on her claims of breach of promise to marry, fraud, and attorney fees. Without having moved for a directed verdict in the trial court, which limits his possible recourse to a new trial,[1] Christopher Ned Kelley raises five enumerations of error, including that a promise to marry is not enforceable when the parties are in a meretricious relationship. We find no error and affirm.

---

[1] "A party that fails to move for a directed verdict is 'barred from contending on appeal that they are entitled to a directed verdict in their favor,' but an appellate court may still 'review the sufficiency of the evidence under the "any evidence" standard of review' to determine if that party is entitled to a new trial. (Footnote omitted.) *Aldworth Co. v. England*, 281 Ga. 197, 201 (2) (637 SE2d 198) (2006)." *Eagle Jets, LLC v. Atlanta Jet*, 321 Ga. App. 386, 391 (1) (740 SE2d 439) (2013).

Construed in favor of the judgment, the evidence produced at trial shows that Kelley and Cooper had been living together since at least 2000 and had one child together, when, on December 23, 2004, Kelley proposed marriage to Cooper and gave her a ring valued at approximately $10,000. Cooper accepted the proposal. The couple continued to live together thereafter and moved to a new home. Cooper also left her job at Kelley's request in order to stay home and raise the children.[2] Although the couple was never formally married, Kelley often held out the couple as husband and wife.

The evidence also shows that after the proposal, Cooper discovered that Kelley had been in a two-year relationship with another woman that extended in time from before the proposal to afterward. After Cooper confronted Kelley, she agreed to stay with him because of his pledges not to see the other woman again and his promises thereafter to marry Cooper. In April 2011, when confronted about a relationship with another woman, Kelley told Cooper that he wanted to be with this woman and that Cooper and the children should move out. Cooper was "devastated" by this development.

---

[2] Cooper had another child from a relationship that preceded her relationship with Kelley.

Cooper filed suit and later amended the action to assert claims to establish paternity and to obtain child support, as well as to assert claims for an implied or constructive trust on certain assets, breach of contract to marry, unjust enrichment, fraud, and attorney fees. During the litigation, the parties resolved all issues concerning paternity, custody, visitation and support. The trial court held a bench trial on the remaining claims. Following the trial, the court entered an order in which it found in favor of Cooper on her claims of breach of promise to marry, fraud, and attorney fees. The court awarded damages on the claims of breach of promise to marry and fraud in the amount of $43,500 and awarded attorney fees of $6,500.

1. Kelley contends the trial court erred because the promise to marry was part of a meretricious relationship and therefore not enforceable.

"'Breach of promise to marry is a common law contract action.'" *Phillips v. Blankenship*, 251 Ga. App. 235, 236 (1) (554 SE2d 231) (2001), quoting *Thorpe v. Collins*, 245 Ga. 77, 78 (1) (263 SE2d 115) (1980). The meretricious relationship defense to a contract claim is derived from OCGA § 13-8-1 and its precursors. *Abrams v. Massell*, 262 Ga. App. 761, 766 (5) (586 SE2d 435) (2003); *Rehak v. Mathis*, 239 Ga. 541, 543 (238 SE2d 81) (1977) (citing Code Ann. § 20-501). OCGA § 13-8-1 provides:

3

A contract to do an immoral or illegal thing is void. If the contract is severable, however, the part of the contract which is legal will not be invalidated by the part of the contract which is illegal.

The Supreme Court of Georgia has held that parties who are unmarried and live together in a sexual relationship are in a meretricious relationship. *Rehak*, 239 Ga. at 542. See also *Abrams*, 262 Ga. App. at 766-767 (5) (*Rehak* is still binding precedent).

A review of the case law, however, shows that the meretricious relationship defense typically is asserted as a defense to a claim of breach of a financial agreement or arrangement between two parties when the agreement is seen as being in exchange for one party's agreement to cohabit with the other party and provide sexual relations.[3] But OCGA § 13-8-1 "'has been held inapplicable where the *object* of the contract is

---

[3] See, e.g., *Phillips*, 251 Ga. App. at 235-237 (2) (issue of fact as to whether claim of unjust enrichment in certain financial transactions arose out of meretricious relationship); *Long v. Marino*, 212 Ga. App. 113, 114 (2) (a) (441 SE2d 475) (1994) (claim that defendant had "an implied duty to provide financial support in return for [the plaintiff's] agreement to live with [defendant] and maintain sexual relations" barred as a meretricious relationship); *Samples v. Monroe*, 183 Ga. App. 187 (358 SE2d 273) (1987) (claims of breach of contract and unjust enrichment regarding shared living expenses barred by OCGA § 13-8-1 because of a meretricious relationship); *Liles v. Still*, 176 Ga. App. 65, 66 (2) (335 SE2d 168) (1985) (issue for jury as to whether agreement to share living expenses arose out of meretricious relationship); *Wellmaker v. Roberts*, 213 Ga. 740, 741 (101 SE2d 712) (1958) (because agreement between woman and defendant to engage in illicit sexual relations formed a part of the contract to share certain expenses, the agreement was void).

4

not illegal or against public policy, but where the illegality or immorality is only collateral or remotely connected to the contract.'"(Citation and punctuation omitted; emphasis in original.) *Phillips*, 251 Ga. App. at 237, quoting *Liles*, 176 Ga. App. at 66 (2).

In this case, Kelley asserts the defense against Cooper's claim of breach of promise to marry. However, the object of such a promise is not illegal or against public policy. In Georgia, the legislature has specifically announced that "[m]arriage is encouraged by the law." OCGA § 19-3-6. Kelley has not cited any cases, nor has our research uncovered one, where the meretricious relationship defense was asserted or upheld in response to a claim of breach of a promise to marry. We therefore conclude that the fact that the parties were living together both before and after the marriage proposal is only collateral to the promise to marry. The meretricious relationship defense is therefore inapplicable, and the promise to marry is enforceable. Cf. *Thorpe*, 245 Ga. at 81 (the obligation recognized by statute that the father of an illegitimate child is bound for its maintenance and education supports an agreement between the biological parents to provide for future support for the child, and "acts of cohabitation between the father and mother, which are not part of the consideration

for the contract, do not render the contract void") (citations and punctuation omitted). Accordingly, Kelley is not entitled to a new trial on this ground.

2. Kelley's argument that Cooper cannot recover in tort that which is not recoverable in contract is made moot by our decision in Division 1.

3. Kelley contends that Cooper cannot recover in fraud because the alleged fraudulent statements were only promises as to future acts.

> In the appellate review of a bench trial, this Court will not set aside the trial court's factual findings unless they are clearly erroneous, and this Court properly gives due deference to the opportunity of the trial court to judge the credibility of the witnesses. The standard by which findings of fact are reviewed is the "any evidence" rule, under which a finding by the trial court supported by any evidence must be upheld.

*Singh v. Hammond*, 292 Ga. 579, 581 (2) (740 SE2d 126) (2013) (citation and punctuation omitted). Because there is some evidence supporting the trial court's finding of fraud, we cannot say the court's decision was clearly erroneous.

It is true that "[a] claim of fraud cannot be predicated on statements which are promissory in their nature as to future acts." See generally *Beard v. McDowell*, 174 Ga. App. 793, 794 (2) (331 SE2d 104) (1985) (citation omitted). But "an exception to this rule exists where a promise as to future events is made with a present intent not

to perform or where the promisor knows that the future event will not take place." (Citation omitted.) *JTH Tax, Inc. v. Flowers*, 302 Ga. App. 719, 725 (2) (691 SE2d 637) (2010). Also, "[f]raud may be proved by slight circumstances, and whether a misrepresentation is fraudulent and intended to deceive is generally a jury question." (Citations and punctuation omitted.) Id.

Here, some evidence was presented to show that at the time he proposed, Kelley did not intend to marry Cooper. First, at the very time that he gave her a $10,000 ring and proposed marriage, he was having an affair with another woman that began before his proposal to marry and continued after Cooper accepted the proposal. He certainly equivocated frequently about his actions and his intent at the time. When asked whether he had seen another woman within three months prior to the proposal, Kelley testified, "It's possible." He gave the same answer when asked if he saw the same woman within three months after the proposal. He also testified "We never had very many discussions around marriage. I personally never initiated any conversations around marriage" and "I never initiated the concept of marriage with her, outside of giving her that ring." Kelley's testimony about the proposal itself was that although he gave Cooper the ring, "I never said the words will you marry me to her." When asked if he gave Cooper a card that started with "What is a wife?", Kelley responded,

7

"Throughout our ten-year relationship, there will be very emotional times and you will do things that doesn't necessarily represent, you know, the actuality of life." When construed in favor of the verdict, this testimony, when juxtaposed with Cooper's testimony about the proposal and her acceptance, can be construed as an admission that Kelley never intended to marry Cooper. Finally, the fact that after Cooper discovered the affair that circumscribed the proposal Kelley promised not to do it again is not relevant to Kelley's intent on the day he proposed and Cooper accepted. For these reasons, the trial court's decision was not clearly erroneous and Kelley is not entitled to a new trial based on this argument.

4. Kelley contends that the damage award for fraud was erroneous for three reasons: (a) it was made by a judge rather than a jury; (b) OCGA § 51-12-6 was inapplicable because the measure of damages in a fraud action is the actual loss sustained as a result of the fraud; and (3) because Cooper failed to present evidence of any "actual loss suffered as a result of Mr. Kelley's purported claim."[4]

---

[4] The dissent raises an argument that the appellant did not raise, namely that because Cooper raised a claim for unjust enrichment (and raised and abandoned a claim for an implied/constructive trust), she was not authorized to seek damages for injury to her peace, happiness, and feelings under OCGA § 51-12-6. Accordingly, the argument asserted by the dissent is not properly before this court. "Our review is limited to those matters enumerated and argued by an appellant." *Peripety Group. v. Smith*, 237 Ga. App. 158, 162 (3) (514 SE2d 262) (1999) (dissent's argument which

8

(a) With regard to the first argument, "'a party may waive a right to jury trial by his or her actions, [including] by appearing at the hearing and allowing the bench trial to proceed without objection.'" *Cole v. ACR/Atlanta Car Remarketing*, 295 Ga. App. 510, 512 (672 SE2d 420) (2008), quoting *Fine v. Fine*, 281 Ga. 850, 851 (2) (642 SE2d 698) (2007). Kelley did not object to a bench trial and therefore has no basis to claim error as a result of not having a jury trial.

(b) In her opening statement, Cooper argued to the trial court that where there are no special damages alleged or shown, "and the injury is confined to the peace, happiness and feelings of the plaintiff, no measure of damages can be prescribed save the enlightened consciences of impartial jurors." This language tracks the language of OCGA § 51-12-6.[5] Nevertheless, the trial court did not state that it awarded damages pursuant to OCGA § 51-12-6. The court simply stated that it was awarding

was not raised by the appellant was not properly before the court).

[5] OCGA § 51-12-6 provides, in full:
In a tort action in which the entire injury is to the peace, happiness, or feelings of the plaintiff, no measure of damages can be prescribed except the enlightened consciences of impartial jurors. In such an action, punitive damages under Code Section 51-12-5 or Code Section 51-12-5.1 shall not be awarded.

"damages for breach of promise to marry and fraud." Thus, Kelley cannot show error based on this argument.

(c) Finally, Kelley's argument that Cooper failed to show "actual damages" on her claim of fraud is controlled adversely by the well-established relevant law of damages:

> In order to recover for fraud, a plaintiff must prove that actual damages, not simply nominal damages, flowed from the fraud alleged. The expression 'actual damages' is not necessarily limited to pecuniary loss, or loss of ability to earn money. General damages are those which the law presumes to flow from any tortious act, and they may be awarded on a fraud claim. Wounding a man's feelings is as much *actual damage* as breaking his limbs. Injury to reputation is a personal injury, and personal injury damages can be recovered in a fraud action.

(Citations and punctuation omitted; emphasis in original.) *Zieve v. Hairston*, 266 Ga. App. 753, 759 (2) (c) (598 SE2d 25) (2004). Here, Cooper testified that she was devastated by Kelley's fraud and breach of promise to marry and that she quit her job to raise the couple's children in reliance on the promise. Thus, some evidence supported the judgment and award of the trial court.

5. Finally, Kelley contends the trial court erred by awarding attorney fees under OCGA § 13-6-11. But that Code section authorizes an award where the defendant

10

acted in bad faith in the underlying transaction – here, in connection with the promise to marry. *Fletcher v. C. W. Matthews Contracting Co.*, __ Ga. App. __ (1) (d) (746 SE2d 230) (2013). And bad faith "may be found in defendant's carrying out the provisions of the contract, that is, in how defendant acted in his dealing with the plaintiff." (Citation and punctuation omitted.) Id. Some evidence was presented to show that Kelley acted in bad faith in connection with the promise to marry given that he was involved in another relationship at the time. We find no grounds for a new trial.

*Judgment affirmed. Barnes, P. J., Andrews, P. J., and Miller, J., concur. Ray, J., concurs in judgment only. Phipps, C. J., and Ellington, P. J., concur in part and dissent in part.*

A13A0982.  KELLEY v. COOPER.

PHIPPS, Chief Judge, concurring in part and dissenting in part.

I concur in Divisions 1 and 2 of the majority opinion. I respectfully dissent from Divisions 3, 4, and 5.

1. With regard to Division 3, I do not agree that the evidence showed that Kelley committed a fraud upon Cooper. The elements of a fraud action are an intentional false representation by the defendant designed to induce the plaintiff to act or refrain from acting, upon which the plaintiff justifiably relies, resulting in damage to the plaintiff."[1]

Although "[f]raud may be proved by slight circumstances, and whether a misrepresentation is fraudulent and intended to deceive is generally a [fact finder's]

---

[1] *Zieve v. Hairston*, 266 Ga. App. 753, 758 (2) (598 SE2d 25) (2004) (citation and punctuation omitted) (physical precedent only).

question,"[2] there must be evidence of "more than a promise regarding future action, which is not actionable."[3]

> However, an exception to this rule exists where a promise as to future events is made with a present intent not to perform or where the promisor knows that the future event will not take place. Fraudulent intent at the time of contracting can be inferred based on subsequent conduct of the defendant that is unusual, suspicious, or inconsistent with what would be expected from a contracting party who had been acting in good faith.[4]

Kelley argues that "[t]here was no evidence presented that [he] promised to marry [Cooper] knowing that they would never marry." "On appeal from the entry of judgment in a bench trial, the evidence must be viewed in the light most favorable to the trial court's findings of fact."[5] The fact that Kelley had an affair that began before he first proposed marriage in 2004 and that continued after Cooper accepted the proposal could not have shown that Kelley never intended to marry Cooper, as the

---

[2] *JTH Tax, Inc. v. Flowers*, 302 Ga. App. 719, 726 (2) (b) (691 SE2d 637) (2010).

[3] *Mallen v. Mallen*, 280 Ga. 43, 45 (1) (a) (622 SE2d 812) (2005) (recognizing that actionable fraud cannot be predicated upon promises to perform some act in the future or on a mere failure to perform promises made) (citation omitted).

[4] *JTH Tax, Inc.*, supra at 725 (2) (b) (citations and punctuation omitted).

[5] *Realty Lenders v. Levine*, 286 Ga. App. 326-327 (649 SE2d 333) (2007) (citation omitted).

2

majority opinion states. According to Cooper (whose testimony the trial court obviously credited over Kelley's), Kelley ended that affair after Cooper confronted him about it, Cooper agreed to stay with Kelley despite the indiscretions, and the two resumed their relationship and talks of marriage. Cooper testified that Kelley later commenced an affair with a *different* person, which affair eventually led to Cooper and Kelley's breakup.

The majority opinion states that the following also showed that Kelley did not intend to marry Cooper at the time he proposed marriage: (1) Kelley's testimony that it was "possible" that he had had an affair with the same woman within three months before and after the proposal; (2) Kelley's testimony that he and Cooper did not discuss marriage much; (3) Kelley's testimony that he never initiated the concept of marriage with Cooper, other than having given her a ring; (4) Kelley's testimony that he did not ask Cooper to marry him when he gave her the ring; and (5) Kelley's testimony as to the reason he had given Cooper a "card that said 'what is a wife.'" The majority opinion states that Kelley's testimony "juxtaposed with Cooper's testimony about the proposal and her acceptance, can be construed as an admission that Kelley never intended to marry Cooper." This "some evidence," which the majority opinion states showed that at the time Kelley proposed marriage he did not intend to marry

3

Cooper, is the same evidence, however, with regard to which the trial court obviously disbelieved Kelley's testimony in ruling in Cooper's favor on her breach of promise to marry claim. "Georgia law has long held that the trier of fact may believe or disbelieve all or any part of the testimony of any witness."[6] But Cooper has not cited any authority holding that a trier of fact may both believe *and* disbelieve the same testimony of a witness. In my view, Kelley's testimony merely demonstrated the conflict in the evidence at trial as to whether he had actually proposed marriage to Cooper.

The pertinent evidence did not show that Kelley acted unusual, suspicious, or inconsistent with what would be expected from a contracting party who had been acting in good faith. Cooper testified that after Kelley had proposed marriage, she and Kelley had "talked about several dates" upon which to get married, but that when the dates would come about, "[w]e either didn't have the money to have the reception that we wanted or we really wanted to get married in Vegas and my dad only took us to Vegas once a year in May, so we would always push it back." Cooper testified that in 2010, she and Kelley had gone on a "romantic" vacation to Daytona Beach. Cooper

---

[6] *River Walk Farm v. First Citizens Bank & Trust Co.*, 321 Ga. App. 173, 177 (4) (741 SE2d 165) (2013).

4

testified that Kelley "never indicated that he wanted to be with [the lady with whom he had had the second affair] until April of 2011," when, according to Cooper, he demanded that she move out of the house. The evidence did not show that Kelley lacked the intent to perform at the time he proposed to Cooper.[7] Notably, Cooper admitted that there was a time after the proposal when she too had a "relationship" with someone else. A finding of fraud cannot be sustained upon these facts, and, in my view, Kelley is entitled to a new trial on that claim.[8]

2. With regard to Division 4, I agree with Kelley's assertion that damages pursuant to OCGA § 51-12-6[9] were not authorized in this case.

> [D]amages for injury to peace, happiness and feelings ("vindictive" damages; OCGA § 51-12-6) can be recovered only where "the entire injury is to the peace, feelings or happiness (and) there is *no injury to the person or purse* . . . the tort being of such a nature as to give rise to mental pain and suffering only. . . ." [T]he code language referring to a

---

[7] See generally *Equifax, Inc. v. 1600 Peachtree, L. L. C.*, 268 Ga. App. 186, 195 (601 SE2d 519) (2004).

[8] See *Aldworth Co. v. England*, 281 Ga. 197, 199 (2) (637 SE2d 198) (2006) (OCGA § 5-6-36 (a) permits "a party to obtain only a new trial on appeal if she prevails on a claim that the evidence was insufficient to sustain the verdict, but failed to move for a directed verdict on that ground at trial.").

[9] OCGA § 51-12-6, pertinently provides, "In a tort action in which the entire injury is to the peace, happiness, or feelings of the plaintiff, no measure of damages can be prescribed except the enlightened consciences of impartial jurors."

5

tort where "the entire injury" is to peace, happiness and feelings includes a situation where the entire injury *claimed* is to peace, happiness and feelings, although there may have been other more insignificant injuries in the case.[10]

Considering only the new claims Cooper asserted in her amended petition, Cooper asserted against Kelley claims for implied/constructive trust (for an equitable partition of real and personal property),[11] unjust enrichment, fraud, and the common law contract action of breach of promise to marry.[12] As to the fraud claim, Cooper specifically alleged in her amended complaint that she was "entitled to damages for [Kelley's] fraud in an amount to be determined by the enlightened conscience of the tier [sic] of fact." Recovery under OCGA § 51-12-6 has been allowed for breach of promise to marry,[13] and where the *sole* cause of action was for "fraudulent

---

[10] *Mallard v. Jenkins*, 186 Ga. App. 167, 168 (1) (366 SE2d 775) (1988) (citations and punctuation omitted; emphasis in original and supplied).

[11] Cooper abandoned this claim at trial.

[12] *Phillips v. Blankenship*, 251 Ga. App. 235, 236 (1) (554 SE2d 231) (2001) ("Breach of promise to marry is a common law contract action.") (citation and punctuation omitted).

[13] *Williamson v. Weeks*, 142 Ga. App. 149 (235 SE2d 587) (1977).

6

misrepresentation."[14] And as the majority opinion recognizes, "[i]njury to reputation is a personal injury, and a personal injury can be recovered in a fraud action."

As to the fraud claim, Cooper alleged in her amended complaint that Kelley "enticed [her] to convey upon [him] benefits based on [his] promise to marry [her]." With regard to the unjust enrichment claim, Cooper alleged that she was "entitled to damages and/or compensation for the benefits that she conferred upon [Kelley] in reliance of [his] promise to marry [her]." As to "benefits," Cooper testified that she and Kelley agreed that she would pay household utility and grocery bills, and Kelley would "buy stocks for us for our future and to pay the mortgage." Cooper also testified that, at Kelley's suggestion, she quit her job, stayed home, and took care of the children, "instead of them going to day care," but that she maintained employment (babysitting or cleaning houses) to "pay her share of the bills."

Here, it is clear that the entire injury claimed was not to the peace, happiness and feelings, but was also to the person or purse, and Kelley correctly asserts that OCGA § 51-12-6 was not the "proper measure of damages for a fraud claim," in this case. The trial court entered a single award of damages for both the fraud and contract claims, and it cannot be determined from the record the amounts awarded for each

---

[14] *Mallard*, supra.

claim. Because, in my opinion, a finding of fraud could not be sustained, and Kelley is entitled to a new trial on that claim, the issue of damages should likewise be submitted to the trier of fact in a new trial.

3. As to Division 5, I do not agree that a basis existed for the trial court's award of attorney fees pursuant to OCGA § 13-6-11. In issuing an award of attorney fees, the trial court found that "[Kelley] has acted in bad faith and has been stubbornly litigious in regards to his promise to marry [Cooper]."[15] Regarding OCGA § 13-6-11,

> [b]ad faith is bad faith arising out of the transaction upon which the complaint is based and refers to a time prior to the institution of action. It generally refers to bad faith in entering into the contract or bad faith during the course of dealings with the plaintiff. . . . If there is any reasonable ground to contest the claim, there is no bad faith and it would be error for the court to permit the jury to return a verdict for penalties and attorney fees. A judgment would not be authorized if the [defendant] had reasonable and probable cause for making a defense to the claim. . . . "[S]tubborn litigiousness," and "causing the plaintiff unnecessary trouble and expense" refer to a defendant's forcing of the plaintiff to sue where no "bona fide controversy" exists. The Supreme Court has

---

[15] *Derrickson v. Kristal*, 148 Ga. App. 320, 321 (3) (251 SE2d 170) (1978) ("[OCGA § 13-6-11], as interpreted, permits the trial judge when sitting as the trier of fact to make an award of litigation expenses.") (citation omitted).

8

described this on a number of occasions as a "wanton or excessive indulgence in litigation."[16]

Cooper initiated suit against Kelley on March 7, 2011, initially alleging claims to establish paternity, child support, and for equitable partition of real and personal property. On March 31, 2011, Kelley answered, admitting paternity and that the child who was the subject of the paternity/support claims was entitled to his support. Kelley denied the allegation that Cooper was entitled to an equitable partition of real or personal property the parties purportedly had acquired jointly during the relationship. Kelley also counterclaimed for custody of the child. The record reflects that the parties submitted to mediation on June 8, 2011, and resolved all issues other than those concerning the partition of real property. On August 2, 2011, the trial court entered an order reflecting the parties' agreement.

On August 10, 2011, Cooper amended her complaint. She reasserted the claims that she had initially asserted, which had already been resolved by order of the court; however, she asserted new claims for implied/constructive trust (requesting an equitable partition of the residence the parties shared), breach of contract for alleged

---

[16] *Jeff Goolsby Homes Corp. v. Smith*, 168 Ga. App. 218, 221 (2) (308 SE2d 564) (1983) (citations and punctuation omitted).

9

breach of "contract to marry," unjust enrichment (for alleged benefits she conferred upon Kelley in reliance on his promise to marry her), fraud (for allegedly intentionally deceiving her for the purpose of receiving benefits from her for which he had no intention of compensating her), and attorney fees. On September 13, 2011, Kelley asserted various defenses, and denied the allegations supporting the new claims. The record shows no further action in the case, until the bench trial was held on November 1, 2012.

The evidence at trial was conflicting as to whether Kelley had actually proposed marriage to Cooper, as to whether Kelley had broken off the relationship by asking Cooper to leave the house, and as to whether Cooper had contributed financially to the household expenses. And as stated above, the evidence showed that both parties had relationships with other people during the relevant time period. Moreover, Cooper admitted that Kelley had paid about $10,000 for the ring that Kelley had given her, and that she still possessed the ring at the time of trial. I would hold, therefore, that as a matter of law, a bona fide dispute existed as to Cooper's new claims, and Kelley had reasonable defenses to the allegations.[17] Moreover, as it was Cooper who amended her

_____

[17] *Ken-Mar Constr. Co. v. Bowen*, 245 Ga. 676, 677 (266 SE2d 796) (1980) (At the appellate level, "'[t]he proper rule is that the judgment [for attorney fees pursuant to OCGA § 13-6-11, on the ground of bad faith] should be affirmed if there is any

10

complaint after all but one of her claims had been disposed of from her initial complaint, and Kelley had done nothing more than raise defenses and deny the new allegations, Kelley has displayed no wanton or excessive indulgence in litigation. Thus, in my view, the trial court erred in entering an award of attorney fees, and that award should be stricken.[18]

Therefore, I would affirm the trial court as set forth in Divisions 1 and 2 of the majority opinion, but I would reverse the trial court as set forth in this dissent. I am authorized to state that Presiding Judge Ellington joins in this dissent.

---

evidence to support it unless it can be said as a matter of law that there was a reasonable defense.") (citation and punctuation omitted); *Myers v. Myers*, 195 Ga. App. 529, 532 (7) (394 SE2d 374) (1990) (physical precedent only) ("Recovery of attorney fees for stubborn litigiousness is not authorized where there is a 'bona fide controversy.'") (citation, punctuation, and emphasis omitted); *Jeff Goolsby Homes Corp.*, supra at 222 (2) (holding that a bona fide dispute existed and that defendants had, as a matter of law, a reasonable defense to plaintiffs' claims; thus, "attorney fees therefore must be stricken from the judgment and award.").

[18] See *Ken-Mar Constr. Co.*, supra; *Jeff Goolsby Homes Corp.*, supra.